**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF INDIANA, SOUTH BEND DIVISION**

| | |
|---|---|
| BARBARA DEVINE, as Personal Representative of the ESTATE OF JOSHUA DEVINE, <br><br> Plaintiff, <br><br> v. <br><br> RON NEAL, KENNETH GANN, WILLIAM LESSNER, CHRISTOPHER BEAL, STEVEN GRIFFIN, JASON NOWATZKE, JEREMY DYKSTRA, ANTHONY WATSON, TIMOTHY REDDEN, CHRISTOPHER PUETZER, RYAN STATHAM, JUSTIN RODRIGUEZ, PROMISE BLAKELY, SARAH ABBASSI, and UNKNOWN EMPLOYEES OF THE INDIANA DEPARTMENT OF CORRECTIONS, <br><br> Defendants. | JURY TRIAL DEMANDED |

**SECOND AMENDED COMPLAINT**

Plaintiff, Barbara Devine, as Personal Representative of the Estate of Joshua Devine, by and through her attorneys, Loevy & Loevy, complains of Ron Neal, Kenneth Gann, William Lessner, Christopher Beal, Steven Griffin, Jason Nowatzke, Jeremy Dykstra, Anthony Watson, Timothy Redden, Christopher Puetzer, Ryan Statham, Justin Rodriguez, Promise Blakely, Sarah Abbassi, and Unknown Employees of the Indiana Department of Corrections (collectively, "Defendants"), and states as follows:

## Introduction

1.      On April 7, 2017, Joshua Devine burned to death in his cell at Indiana State Prison (ISP).

2.      Joshua Devine died because Defendants ignored his increasingly desperate cries for help, the cries for help from numerous other prisoners in his housing unit, and the thick smoke billowing out of his cell and filling the entire cell house.

3.      Despite having both the opportunity and obligation to save Mr. Devine's life by opening his cell door and rescuing him from the fire, Defendants let Mr. Devine burn to death instead. They did not open his cell door until nearly an hour after the fire began, long after Mr. Devine's chance of survival had passed.

4.      Despite being aware of the risk posed by fires, Defendants knowingly allowed dangerous conditions to persist in Mr. Devine's housing unit, and failed to take basic fire safety measures that would have prevented or mitigated the fire that killed Mr. Devine.

5.      Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and Indiana law to hold Defendants accountable for their misconduct and for violating Mr. Devine's constitutional rights, and to redress the loss caused to Mr. Devine and his family by Defendants' callous and inexcusable conduct.

## Jurisdiction and Venue

6.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

2

7.      Venue is proper under 28 U.S.C. § 1391(b). On information and belief, at least one Defendant resides in this judicial district and the events giving rise to the claims asserted here all occurred within this district.

**Parties**

8.      Joshua Devine was a 30-year-old prisoner housed at ISP. Plaintiff Barbara Devine is Mr. Devine's mother. On May 11, 2017, Barbara Devine was appointed as Personal Representative of Mr. Devine's Estate by the La Porte County Superior Court, case # 46D02-1704-EU-087.

9.      At all times relevant to his involvement in this case, Defendant Ron Neal was the Warden at ISP and an employee of the Indiana Department of Corrections (IDOC). Defendant Neal was responsible for the development, implementation, oversight, and supervision of policies and practices at ISP, and the oversight and discipline of staff there. Defendant Neal is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Neal was acting under color of law and within the scope of his employment.

10.      At all times relevant to his involvement in this case, Defendant Kenneth Gann was the Assistant Superintendent of the Operations Division at ISP and an employee of the IDOC. Defendant Gann was responsible for the development, implementation, oversight, and supervision of policies and practices regarding security and operations at ISP, as well as the oversight and discipline of staff there. Defendant Gann is sued here in his individual capacity. At all times

3

relevant to the events at issue in this case, Defendant Gann was acting under color of law and within the scope of his employment.

11.     At all times relevant to his involvement in this case, Defendant William Lessner was the Chief Facility Investigator at ISP and an employee of the IDOC. Defendant Lessner was responsible for monitoring and correcting sub-standard living conditions, policy violations, safety concerns, and prisoner grievances at ISP. Defendant Lessner is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Lessner was acting under color of law and within the scope of his employment.

12.     At all times relevant to his involvement in this case, Defendant Christopher Beal was the head of the Facility Training Department at ISP and an employee of the IDOC. Defendant Beal was responsible for developing training resources and ensuring that all staff at ISP were properly trained. Defendant Beal is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Beal was acting under color of law and within the scope of his employment.

13.     At all times relevant to his involvement in this case, Defendant Steven Griffin was the Safety Hazard Manager at ISP and an employee of the IDOC. Defendant Griffin was responsible for establishing and monitoring a safety program at ISP; ensuring that the facility was in compliance with applicable fire, health, and safety rules and regulations; and ensuring that the facility was maintained and operated in a fashion that minimized fire, health, and safety risks. Defendant

Griffin is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Griffin was acting under color of law and within the scope of his employment.

14.   At all times relevant to his involvement in this case, Defendant Jason Nowatzke was a major and the Chief Custody Officer at ISP, and an employee of the IDOC. Defendant Nowatzke was responsible for operations during emergencies at ISP and for developing procedures to implement IDOC policies. Mr. Nowatzke is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Nowatzke was acting under color of law and within the scope of his employment.

15.   At all times relevant to their involvement in this case, Defendants Jeremy Dykstra, Anthony Watson, Timothy Redden, Christopher Puetzer, Ryan Statham, Justin Rodriguez, Promise Blakely, Sarah Abbassi, and Unknown Employees of the Indiana Department of Corrections (collectively, "Defendant Officers") were correctional officers, sergeants, lieutenants, or captains at ISP and employees of the IDOC. Defendant Officers were responsible for the safety and welfare of prisoners at ISP, including Joshua Devine. Defendant Officers are sued here in their individual capacities. At all times relevant to the events at issue in this case, Defendant Officers were acting under color of law and within the scope of their employment.

5

## Factual Allegations

16.    On April 7, 2017, Defendant Officers were present and on duty at ISP. During the events at issue in this complaint, Defendants Watson, Redden, Puetzer, Statham, Rodriguez, Blakely, Abbassi and other Defendant Officers were present in the B cell house, and Defendant Dykstra was in direct contact with these officers over the radio.

17.    On April 7, 2017, after the 9:00 p.m. count, the prisoners housed in ISP's B cell house were secured in their cells. Joshua Devine was alone in his cell on the top floor of the B cell house on the north side.

18.    Shortly after 9:00 p.m., the television in Mr. Devine's cell caught on fire. He began to shout that there was a fire. Mr. Devine's cries for help were heard by prisoners in surrounding cells. Correctional staff, including Defendant Officers, also heard or were made aware of Mr. Devine's cries for help.

19.    Mr. Devine's cell began to fill with thick, dense smoke that in turn spread to the entire cell house. As prisoners in nearby cells realized what was happening, they too began to shout out for help and bang against their cells to get the attention of correctional staff.

20.    The Defendant Officers heard or were made aware of the cries for help and banging noises made by the prisoners, but they took no meaningful action to respond to the emergency or to aid Mr. Devine.

21.    The smoke in the cell house became so thick that the prisoners living there could not see more than a few feet in front of them and struggled to breathe.

22.     Eventually, flames engulfed Mr. Devine's whole cell with him in it.

23.     When Mr. Devine's television caught fire, Defendant Rodriguez was in the B cell house. He proceeded to Mr. Devine's cell but did not open the door to the cell or take any meaningful actions to protect Mr. Devine from the dangerous fire in his cell.

24.     Within a very short period of time after the fire began, due in large part to the increasingly desperate cries for help from Mr. Devine and the other prisoners in B cell house, Defendant Officers and other ISP staff all became aware of the emergency situation. None of them took any meaningful action to address the fire or aid Mr. Devine.

25.     The Defendant Officers had multiple opportunities and mechanisms to release Mr. Devine from his cell and save him from the fire, including a manual release system (keys), and an electronic release system. But Defendant Officers did not release Mr. Devine from his cell or otherwise protect him from the fire.

26.     Defendant Officers prevented prisoner firefighters from entering the unit to combat the fire in Mr. Devine's cell until it was too late.

27.     The fire escape stairs in the B cell house had been locked prior to this incident, and remained locked for the duration of the incident. Defendants were aware of the locked escape stairs, and were aware of the danger this posed to prisoners in the B cell house, yet took no action to correct this dangerous condition.

28.     Prior to this incident, Defendants had implemented severe restrictions on the amount of water that prisoners could use in their cells, including severely

7

limiting the number of times a prisoner could flush his toilet. Defendants were aware that these restrictions would be dangerous in the event of a fire. This is exactly what took place, as the restrictions severely inhibited the ability of Mr. Devine and other prisoners to combat the fire themselves in the face of Defendants' inaction.

29.    There was no working sprinkler system in the B cell house. Defendants were aware of this deficiency, and of the danger it posed to prisoners in the cell house, yet took no steps to correct this dangerous condition.

30.    Defendants were aware of, and yet took no steps to correct, numerous other dangerous conditions at ISP that increased the risk and decreased the survivability of fires, including persistent electrical defects and highly flammable materials in prisoner living areas, including in Mr. Devine's cell.

31.    Defendants were aware of, and yet took no steps to correct, dangerously deficient policies and procedures at ISP that increased the risk and decreased the survivability of fires, including totally inadequate policies to ensure that prisoners could be safely and quickly evacuated from their cells in the event of an emergency.

32.    As a result of Defendants' misconduct, Mr. Devine died locked in his cell where a fire raged.

33.    After an examination by the coroner, Mr. Devine's cause of death was determined to be thermal burns.

## Plaintiff's Damages

34.    As a result of Defendants' misconduct, Mr. Devine died after suffering horrific injury. He was a young man, and his whole life was wiped away. His family has also suffered extreme injury and loss because of Mr. Devine's death.

35.    Plaintiff Barbara Devine, as the Personal Representative of the Estate of Mr. Devine, seeks to recover for the severe harm caused by Defendants, including but not limited to damages for the loss of Mr. Devine's life; the severe physical and emotional pain and suffering, mental anguish, loss of liberty, humiliation, degradation, and anxiety that Mr. Devine suffered while he was locked in his cell with the fire raging; the loss of society and companionship that his family has suffered; funeral and burial expenses; lost earnings; and the costs and expenses of administering Mr. Devine's Estate, including attorney's fees.

## COUNT I
## 42 U.S.C. § 1983 – Failure to Protect
## All Defendants

36.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

37.    In the manner more fully described above, Defendants, in derogation of their constitutional duty, acted with deliberate indifference to Mr. Devine's health and safety.

38.    Mr. Devine was subjected to a strong likelihood of serious harm when he remained locked in his cell after a fire broke out and flames engulfed his cell.

9

Defendant Officers knew the danger Mr. Devine faced if he was left in his cell while the fire raged.

39.    Despite knowing the risk of harm to Mr. Devine, Defendant Officers failed to take any meaningful actions to put out the fire or remove Plaintiff from his cell. This failure was intentional, malicious, and/or a result of deliberate indifference to Mr. Devine's rights.

40.    Defendants Neal, Gann, Lessner, Beal, Griffin, and Nowatzke knew about the dangerous conditions in the B cell house, including but not limited to the water restrictions and the lack of sprinklers, were aware of the serious risk of harm these conditions posed to prisoners in the event of a fire, and had both the ability and responsibility to take action in response to that knowledge. But despite their knowledge, these Defendants failed to take any steps to remedy any of these dangerous conditions. These failures were intentional, malicious, and/or a result of deliberate indifference to Mr. Devine's rights.

41.    The dangerous conditions that were allowed to persist in the B cell house as a result of these Defendants' misconduct thwarted efforts that otherwise could have been taken to save Mr. Devine's life and/or caused the fire to spread more rapidly than it otherwise would have.

42.    Defendants Neal, Gann, Lessner, Beal, Griffin, and Nowatzke knew of the serious risk that an emergency, such as a fire, posed to prisoners who were unable to move freely or control the conditions of their confinement, and further

10

knew that because prisoners are typically unable to move freely about ISP, an emergency-response or evacuation plan was necessary to ensure prisoner safety.

43.    Despite this knowledge, Defendants Neal, Gann, Lessner, Beal, Griffin, and Nowatzke did not have an adequate emergency-response or evacuation plan in place, and failed to train and instruct staff on any such plan. These failures were intentional, malicious, and/or a result of deliberate indifference to Mr. Devine's rights.

44.    Mr. Devine suffered physically and emotionally, and ultimately died as a result of the fire in his cell, which would not have happened but for Defendants' misconduct as alleged in this Count.

**COUNT II**
**42 U.S.C. § 1983 – Conspiracy**
**All Defendants**

45.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

46.    In the manner more fully described above, Defendant Officers reached an agreement among themselves to leave Mr. Devine locked in his cell despite knowing that the fire posed a serious risk to Mr. Devine's health, safety, and life, thus depriving him of his constitutional rights, as described in the various paragraphs of this Complaint.

47.    In the manner more fully described above, Defendants reached an agreement among themselves to expose Mr. Devine and the other prisoners to dangerous conditions and thereby a risk of serious harm.

11

48.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

49.    The misconduct described in this Count was intentional, malicious, and/or a result of reckless indifference to Mr. Devine's rights.

50.    As a direct and proximate result of the illicit prior agreement referenced above, Mr. Devine's rights were violated, and he suffered injuries including pain, suffering, emotional distress, and ultimately death.

**COUNT III**
**42 U.S.C. § 1983 – Failure to Intervene**
**Defendant Officers**

51.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

52.    In the manner more fully described above, each of the Defendant Officers had a reasonable opportunity to prevent the violation of Mr. Devine's constitutional rights as set forth above, but failed to do so.

53.    The misconduct described in this Count was intentional, malicious, and/or a result of reckless indifference to Mr. Devine's rights.

54.    As a direct and proximate result of the failure to intervene referenced above, Mr. Devine's rights were violated, and he suffered injuries including pain, suffering, emotional distress, and ultimately death.

## COUNT IV
### Negligent or Willful and Wanton Conduct
### All Defendants

55. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

56. In the manner described more fully above, Defendants' conduct breached the duty of care owed to Mr. Devine, who was in their custody and care.

57. Defendant Officers breached their duty of care by failing to take reasonable steps to release Mr. Devine from his cell after the fire began, to put out the fire, and/or to otherwise protect him from the danger posed by the fire.

58. Defendants Neal, Gann, Lessner, Beal, Griffin, and Nowatzke further breached their duty of care by failing to have policies, protocols, and safety mechanisms in place to protect Mr. Devine and the other prisoners in the case of an emergency, such as the fire that occurred on April 7, 2017, and by exposing Mr. Devine and the other prisoners to dangerous conditions and thereby a risk of serious harm.

59. Alternatively, the actions of Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of Mr. Devine and the other prisoners. Defendants were aware that an injury would probably result from their actions or failures to act and recklessly disregarded the consequences of those actions or failures to act.

60.    As a direct and proximate result of Defendants' negligence and/or willful and wanton conduct, Mr. Devine endured conscious physical and emotional pain and suffering prior to his death.

## COUNT V
### Intentional Infliction of Emotional Distress
### Defendant Officers

61.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

62.    In the manner described more fully above, by failing to take adequate steps to aid Mr. Devine after they learned he was locked in his burning cell, by failing to take any meaningful action to put out the fire, and by thwarting the efforts of others to put out the fire, Defendant Officers engaged in extreme and outrageous conduct.

63.    Defendant Officers' actions as set forth above were rooted in an abuse of power or authority.

64.    Defendant Officers' conduct as set forth above was undertaken with intent to cause, or with reckless disregard of the high probability that the conduct would cause, severe emotional distress to Mr. Devine.

65.    As a direct and proximate result of Defendants' misconduct, Mr. Devine endured severe emotional distress prior to his death.

14

## COUNT VI
### Negligent Infliction of Emotional Distress
### All Defendants

66.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

67.     In the manner described more fully above, by failing to take any meaningful action to aid Mr. Devine after they learned he was locked in his burning cell, by failing to take any meaningful action to put out the fire, and by thwarting the efforts of others to put out the fire, Defendant Officers breached their duty of care to Mr. Devine.

68.     In the manner described more fully above, by failing to take measures to protect Mr. Devine and other prisoners from dangerous conditions, Defendants breached their duty of care to Mr. Devine.

69.     As a direct and proximate result of Defendants' misconduct, Mr. Devine endured severe emotional distress prior to his death.

## COUNT VII
### Wrongful Death
### All Defendants

70.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

71.     In the manner described more fully above, Defendants' conduct breached the duty of care owed to Mr. Devine, who was in their custody and care.

72.     Defendant Officers breached their duty of care by failing to take reasonable steps to release Mr. Devine from his cell after the fire began, to put out

the fire, and/or to otherwise reasonably protect him from the danger posed by the fire.

73.    Defendants Neal, Gann, Lessner, Beal, Griffin, and Nowatzke further breached their duty of care by failing to have policies, protocols, and safety mechanisms in place to protect Mr. Devine and the other prisoners in the case of an emergency, such as the fire that occurred on April 7, 2017, and by exposing Mr. Devine and the other prisoners to dangerous conditions and thereby a risk of serious harm.

74.    Alternatively, the actions of Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of Mr. Devine and the other prisoners. Defendants were aware that an injury would probably result from their actions or failures to act and recklessly disregarded the consequences of those actions or failures to act.

75.    As a direct and proximate result of Defendants' negligence and/or willful and wanton conduct, Mr. Devine suffered physical pain and injuries, resulting emotional injuries, and ultimately death.

WHEREFORE, Plaintiff Barbara Devine, as Personal Representative of the Estate of Joshua Devine, respectfully requests that this Court enter judgement in her favor and against Defendants, awarding compensatory damages, punitive damages, attorney's fees and costs, and any other relief this Court deems just and appropriate.

16

## JURY DEMAND

Plaintiff Barbara Devine hereby demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.

Dated: April 5, 2019

Respectfully submitted,

Barbara Devine,
as Personal Representative of the
Estate of Joshua Devine

BY:    /s/ Megan Pierce
       One of Plaintiff's Attorneys

Arthur Loevy
Jon Loevy
Sarah Grady
Sam Heppell
Adair Crosley
Megan Pierce
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, IL 60607
T: (312) 243-5900
F: (312) 243-5902
megan@loevy.com

Thomas Anthony Durkin
DURKIN & ROBERTS
THE RERUM NOVARUM HUMAN & CIVIL RIGHTS CENTER OF CHICAGO
2446 N. Clark Street
Chicago, IL 60614
T: (312) 913-9300
F: (312) 913-9235
tadurkin@rerumnovarum.legal

17