## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| BARBARA DEVINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:18-cv-00995-JD-MGG |
| | ) | |
| RON NEAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT NEAL'S RESPONSES TO PLAINTIFF'S
### FIRST SET OF INTERROGATORIES

Defendant Ron Neal, by counsel, submits his responses to Plaintiff's First Set of Interrogatories:

1.    Identify by name and address all Persons who, to the best of your understanding, have knowledge of facts that relate to any of the claims or defenses in this action, including but not limited to all Persons who are not listed in the parties' Rule 26(a)(1) Initial Disclosures. For each Person with knowledge responsive to this Interrogatory, please describe with particularity any categories of facts known by each such Person relating to the claims and defenses in this action, including all categories of facts about which the Person may be competent to testify at trial.

If this Interrogatory is answered by incorporating Documents, please provide the identities of any additional Persons who are not listed in the Documents that you reference, as well as any categories of facts known to any witness relating to the claims or defenses in this action that are not reflected in the Documents that you

reference; in the event that you fail to do so, Plaintiff will assume the witnesses and the substance of their testimony is strictly limited to what is contained in the Documents that you reference.

**Response:** I would refer you to the Critical Incident Report 2019-07-08-08T15:38:50, as well as, the Coroner's Report, the Indiana State Fire Marshall Report, IDOC Internal Affairs Division Report of Investigation Case No. 17-ISP-00800, and the BCH Power Point Time Line Report. To my knowledge, all persons with direct knowledge about this incident are included in those reports.

However, I do not believe that the medical staff from Wexford who treated Offenders in our MSU, Medical Services Unit, for Smoke Inhalation after the Cell House was evacuated are included in any of these documents. Nor are the Mental Health Staff that walked the cell house and spoke to the Offenders about their Mental Health needs. Nor are the Health Care Staff who treated Offenders listed in these reports, or the Offender Representatives who helped Mental Health Staff by walking the Cell House and talking with the Offenders listed in the reports. These persons may include the following individuals:

Sherri Fritter, Health Care Administrator
On Duty Nursing Staff
Dr. Reginald Matias, Lead Psychologist
Andrew Manning, MHP
Dawn Buss – Coordinated the Offender Mentors from various shelters who walked BCH to speak with the Offenders in BCH to help them calm down, process what happened, and determined those Offenders who may need additional Mental Health Treatment.

2.      Identify every Communication that you have had about any of the allegations, events, or circumstances described in Plaintiff's Complaint with any Person. For each such Communication, please: (a) state with particularity the substance of the Communication; (b) Identify everyone involved in the Communication; (c) provide the date of the Communication; and (d) state whether or not the Communication was memorialized in a report or other Document.

**Response:** Listed below are the reports that communications about the events were memorialized in:

    a.  IDOC Critical Incident Report dated 4/7/2017
    b.  Indiana State Fire Marshall Report
    c.  La Porte County Coroner's Report
    d.  IDOC Internal Affairs Case Report – 17-ISP-0080
    e.  BCH Power Point Timeline of Events

As far as any specific conversations I may have had with anyone, discussing the fire incident, I cannot remember with whom or when the conversations occurred, but other communications are memorialized either in the above-listed documents or in any emails that may be produced by my attorneys.

3.      Identify any and all criminal convictions of any party or witness with knowledge relating to any of the claims or defenses of this action. For each such responsive conviction, identify: (a) the Person who has been convicted and the nature of the conviction, and (b) the complete factual basis as to why the conviction qualifies as admissible under Federal Rule of Evidence 609. Please be advised that your duty to supplement your answer to this Interrogatory remains ongoing as discovery progresses, and that Plaintiff intends to move *in limine* to bar any references to convictions not identified in the manner requested.

**Response:** I have no knowledge of anyone who has criminal convictions.

4.      Please explain with as much particularity as possible when, how, and under what circumstances you became aware of the 2017 Fire. With regard to when you learned of the 2017 Fire, please reference the time or other events to the extent possible. Your response should include your physical location when you learned of the 2017 Fire.

3

**Response:** I first learned of the Fire at approximately 9:45pm when Captain Dykstra called me at home to report what was going on within BCH. His report was hard to understand as he was under duress and was still dealing with what was happening in BCH as he was attempting to share with me what was going on. Several times during his initial report, Captain Dykstra was interrupted by Radio Communication that divulged new information about what was happening in BCH. However, I received the gist of the information and understood that we had a serious fire taking place within BCH and that the Lieutenant on scene had begun to evacuate the cell house due to heavy smoke. I also understood that the Fire was started in the cell of Offender Josh Devine and that staff were having difficulty getting to him to put out the fire due to extreme heat and flames coming from the cell.

5.     With specificity, explain each step you took once you learned of the 2017 Fire. If you spoke to, had any Communications with, or acted in coordination with any other individual, including another Defendant or a third-party, please Identify that individual and explain the contents of any Communications with that individual, as well as what actions you both took. The substance of your response should cover the time period from when you first learned of the 2017 Fire until twenty-four hours later, and should include all actions, Communications, or decisions not to act during that time period that relate to or occurred as a result of the 2017 Fire.

**Response:** I was first called at home, as mentioned in Number 4. I then called Director William Wilson within a few minutes of me being notified, approximately 10pm, after I got up and dressed to report the fire initially. At approximately 10:15pm, I was on site at ISP in the Command Center – Warden's Office. During the course of talking with Captain Dykstra, he asked me about evacuating the cell house and as we were discussing it he interrupted me and told me that someone has already started evacuating the cell house. The next communication I received, at approximately 10:15pm, was Captain Dykstra telling me that Offenders were tearing down Check Point 7, assaulting staff, and trying to get into the Chapel. I advised Captain Dykstra that I had activated our E-Squad and would send him additional help as soon as they arrived and to attempt to use the First Responder Staff he had on site to contain the BCH Offenders outside of BCH on the sidewalk area until we

4

could clear the smoke out of BCH and return Offenders to their cells. As Staff arrived in the Command Center, most were sent inside to BCH to assist with crowd control. Other Staff, such as I&I Staff, assisted with calling the Ambulance, Coroner's Office, and Fire Marshall's Office. At approximately 10:21pm, I was notified that the body of Joshua Devine had been moved to the Hoosier Room to await the Coroner's arrival. The County Coroner arrived on the grounds at approximately 11:15pm. As the night went on, and the Fire Fighters had cleared the smoke from the cell house, Offenders were returned to their cells five at a time. I recall some Offenders requesting medical treatment for smoke inhalation and were seen both on site and within MSU. An emergency count was called at approximately 12:50am and cleared at approximately 1:43am.

6.    What was the cause of the 2017 Fire, and how was this cause determined? Please include all investigative steps taken to reach this conclusion and identify the individuals involved in the investigation.

**Response:** The cause of the Fire was determined by the Fire Marshall's Office – Michael Vogely, and was determined to be initiated by Offender Devine's television. Also found within the cell, was stripped pieces of wiring and wires that had been stuck into the outlet within the cell, best I can recall.  However, I would refer to the Fire Marshall's Report for the cause of the Fire.

7.    Were you prevented in any way from taking action to remove Joshua Devine from his cell and/or open or unlock his cell door immediately upon learning that there was a fire in the cell on April 7, 2017? If your answer is anything other than an unqualified "no," please Identify every Person, situation, circumstance, policy, practice, rule, and/or regulation which you contend prevented you in any way from removing or freeing Devine from his cell, and state fully how such Person, situation, circumstance, policy, practice, rule, and/or regulation prevented you. To the extent that you contend the preventative effect or impediment of any such Person, situation, circumstance, policy, practice, rule, and/or regulation was

5

temporary, please describe the time frame in which you contend it was in place and explain why and/or how it ceased.

**Response:** I was not in the cell house.

8.      Identify any procedures, mechanisms, tools, infrastructure, or equipment in place at Indiana State Prison at the time of the 2017 Fire to reduce the risk of or mitigate the harms or injuries caused by fires, including but not limited to any sprinkler systems, smoke detectors, fire alarms, emergency exits, fire extinguishers or other fire suppression equipment, evacuation plans, and the date and frequency of any fire or evacuation drills conducted in the five years prior to the 2017 Fire. For any physical objects or systems identified in response to this interrogatory, please identify the quantity and physical location(s) of those objects or systems in the Indiana State Prison.

**Response:** Listed below:

a) Fire extinguishers

b) Offender Fire Department

c) City Fire Department

d) Evacuation Signs posted within the Housing Unit

e) Fire Drills conducted by Steve Griffin, Safety Hazard Manager

f) Fire Alarm System

g) Sprinkler Systems

h) Housing Unit Post Orders

6

i)  Concrete and steel structure

j)  Fire Retardant Mattress and furnishings in the cell

9.    Identify any policies, practices, and procedures in place at Indiana State Prison at the time of the 2017 Fire regarding the locking of prisoners in their cells, including when and why prisoners are locked in their cells, and who locks or oversees the locking of the cell doors. This further includes who is permitted or required to have possession of which keys and at what times, as well as where keys are kept when they are not in the physical possession of any officer and who has access to those keys. For each policy, practice, or procedure, please identify its source (i.e. a specific manual or regulation) to the best of your knowledge.

**Response:** Policy 00-02-201 – Compliance with Federal and State Fire, Health and Safety Regulations.

10.    Was any disciplinary action considered or taken against any Indiana Department of Correction employee or contractor in relation to the 2017 Fire or Joshua Devine's death? If your answer is anything other than an unqualified "no," please identify the person disciplined or against whom discipline was considered, the reasons for disciplining or not disciplining that person, and the type of disciplinary action taken.

**Response:** No.

11.    For any affirmative defenses that you have asserted or will assert in this matter, please describe the entire factual basis supporting each such defense and specifically identify any witnesses or physical, documentary, or testimonial evidence that supports each such defense. The information sought by this interrogatory is not a mere recitation of the statutory sections, case law, or common law invoked in the defense. Plaintiff requests that you provide a detailed description of every fact and legal basis on which the affirmative defense is asserted so that Plaintiff may have the opportunity to investigate by way of additional discovery requests. For example, if you intend at any point in this litigation to assert an immunity defense, please state all facts, evidence, and legal bases for such a defense, identifying any witnesses or physical, documentary, or testimonial evidence relating to the immunity defense.

**Response:** Defendant objects to this interrogatory as improperly requiring defendant to set forth his entire litigation strategy in this lawsuit. Subject to and without waiving this objections, please see all witnesses identified in defendants' initial disclosures. See also all documents produced by defendants.

12.    For punitive damages purposes, please estimate your net financial worth. Please describe how that net worth has been calculated by providing a balance sheet of all assets greater than $2,500 USD (including a description of any ownership of stock, mutual funds, real estate, etc.) and including all liabilities. Please also provide an income statement for the five years prior to the filing of this complaint, including your annual salary and any income from any other source for those years.

**Response:** Defendant objects to this interrogatory as being overbroad, to the extent in seeks information beyond the defendant's *current* financial status. *U.S. v. Autumn Ridge Condominium Ass'n, Inc.* 265 F.R.D. 323, 328-29 (N.D. Indiana, 2009). Subject to and without waiving this objection, Defendant answers as follows: My current annual salary is $85,000.

13.    Did you or any other Person act inconsistently with any of the policies, customs, or practices (formal or informal, written or unwritten) of the Indiana Department of Correction or the Indiana State Prison, as you understand them, at any point during the 2017 Fire or in its immediate aftermath, as described in Plaintiff's Complaint? If your answer is anything other than an unqualified "no," please: (a) identify the particular policy(ies), custom(s), or practice(s) which, to your knowledge, was violated and by whom; (b) describe the circumstances and manner in which said policy(ies), custom(s), or practice(s) was violated; and (c) state whether any discipline resulted from that violation.

**Response:** No.

14.    For any Document requested in Plaintiff's discovery requests which has been lost, discarded or destroyed, please identify each such document as completely as possible and state the approximate date it was lost, discarded or destroyed; the circumstances and manner in which it was lost, discarded or destroyed, including the identities of all persons involved; the reasons for disposing of the Document; the identity of any persons with knowledge of its content; and the identity of the last person known to have seen it.

9

**Response:** There could be some email messages about the Fire, but none that I especially saved on my desktop or in a folder. However, they are no longer accessible by me, but may possible be able to retrieve by IOT staff.

I affirm under penalties for perjury that the facts in the foregoing answers are true.

Dated: ___8/16/19___                    _____
                                         Ron Neal

10