**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA, SOUTH BEND DIVISION**

| | | |
|---|---|---|
| DENISE DWYER, as Personal Representative of the ESTATE OF JOSHUA DEVINE, | ) ) ) | |
| | ) | No. 3:18-cv-00995-JD-MGG |
| Plaintiff, | ) ) | |
| v. | ) ) | Hon. Judge Jon E. DeGuilio, Judge |
| RON NEAL, et al. | ) ) | Hon. Michael G. Gotsch, Sr., M.J. |
| Defendants. | ) ) ) ) | |

# <u>EXHIBIT 57</u>



STATE OF INDIANA

## OFFICE OF THE ATTORNEY GENERAL

**CURTIS T. HILL, JR.**
INDIANA ATTORNEY GENERAL

INDIANA GOVERNMENT CENTER SOUTH, FIFTH FLOOR
302 WEST WASHINGTON STREET ● INDIANAPOLIS, IN 46204-2770
www.AttorneyGeneral.IN.gov

TELEPHONE: 317.232.6201
FAX: 317.232.7979

September 29, 2020

Arthur Loevy
Jon Loevy
Sarah Grady
Sam Heppell
Megan Pierce

LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, IL 60607

  *Re: Devine v. Neal, et al. – Plaintiff's Discovery Requests*

Counsel,

  Enclosed please find Defendants' Responses to Plaintiff's First Set of Requests for Admissions to All Defendants.

        Thank you,

**Gustavo A. Jimenez**
Deputy Attorney General
Government Litigation Section
Office of Attorney General Curtis Hill
302 West Washington Street
IGCS-5th Floor
Indianapolis, IN 46204

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA, SOUTH BEND DIVISION**

| | |
|---|---|
| DENISE DWYER, as Personal Representative of the ESTATE OF JOSHUA DEVINE, | ) ) ) ) Case No. 3:18-cv-00995-JD-MGG |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Judge Jon E. DeGuilio |
| RON NEAL, et al. | ) ) ) Magistrate Judge Michael G. |
| Defendants. | ) Gotsch, Sr. ) |

**DEFENDANTS' RESPONSES TO
PLAINTIFF'S FIRST SET OF
REQUESTS FOR ADMISSION TO ALL DEFENDANTS**

Defendants, Ron Neal, Kenneth Gann, William Lessner, Christopher Beal, Steven Griffin, Jason Nowatzke, Jeremy Dykstra, Anthony Watson, Timothy Redden, Christopher Puetzer, Ryan Statham, Justin Rodriguez, and Sarah Abbassi, by counsel, respond to Plaintiff's First Set of Requests for Admissions as follows:

**To All Defendants:**

1.    Admit that Promise Blakely did not go to the 500 range of B Cell House at any point on April 7, 2017 between the time that the 2017 Fire began and the time that the 2017 Fire was extinguished in Joshua Devine's cell.

**Response**: Admit.

2.    Admit that Sarah Abbassi did not go to the 500 range of B Cell House at any point on April 7, 2017 between the time that the 2017 Fire began and the time that the 2017 Fire was extinguished in Joshua Devine's cell.

**Response**: Deny.

3.    Admit that Justin Rodriguez's radio was not functioning properly during the time of the 2017 Fire.

**Response**: Defendants lack sufficient knowledge to admit or deny.

4.    Admit that Justin Rodriguez's radio was functioning properly during the time of the 2017 Fire.

**Response:** Defendants lack sufficient knowledge to admit or deny.

5.    Admit that there was no written policy in effect at Indiana State Prison on April 7, 2017 regarding how a prisoner who is locked in his cell should inform a staff member of an emergency.

**Response:** Defendants admit that while there were numerous written policies in place governing emergency situations at the Indiana State Prison on April 7, 2017, there was not a single written policy outlining how a prisoner who is locked in his cell should inform a staff member of an emergency.

6.    Admit that the policies and procedures in effect at Indiana State Prison on April 7, 2017 required correctional officers to promptly investigate unusual noises or disturbances coming from prisoners in a cell house.

**Response:** Defendants admit that security checks are conducted for the well-being of offenders and deny the remainder of this request.

7.    Admit that there is no evidence that suggests that Joshua Devine intended to start a fire in his cell on April 7, 2017.

**Response:** Deny. Defendants admit that there was evidence of stripped wiring and insulation found on the floor within the debris.

8.    Admit that Joshua Devine did not do anything after the 2017 Fire started in his cell that impacted the ability of any correctional officer to extinguish the fire.

**Response:** Defendants lack sufficient knowledge to admit or deny, therefore deny.

9.    Admit that Joshua Devine did not do anything after the 2017 Fire started in his cell that impacted the ability of any correctional officer to open his cell door.

**Response:** Defendants lack sufficient knowledge to admit or deny, therefore deny.

10.    Admit that there was no policy, procedure or custom in effect at Indiana State Prison on April 7, 2017, whether written or unwritten, which prohibited Promise Blakely from giving her 500 Range keys to another correctional

2

officer for the purpose of allowing that officer to open Joshua Devine's cell door during the fire.

**Response**: Admit.

11.    Admit that there was no policy, procedure or custom in effect at Indiana State Prison on April 7, 2017, whether written or unwritten, which prohibited another correctional officer from asking Promise Blakely to give him/her the 500 Range keys that Blakely had, for the purpose of allowing that officer to open Joshua Devine's cell door during the fire.

**Response**: Admit.

12.    Admit that the policies, procedures, and customs in effect at Indiana State Prison on April 7, 2017, whether written or unwritten, required correctional officers in cell houses who learned there was a fire in the cell house to release any prisoner firefighters housed in that cell house from their cells.

**Response**: Deny.

13.    Admit that the policies, procedures, and customs in effect at Indiana State Prison on April 7, 2017, whether written or unwritten, did not require correctional officers in cell houses who learned there was a fire in the cell house to release any prisoner firefighters housed in that cell house from their cells.

**Response**: Deny.

14.    Admit that the policies, procedures, and customs in effect at Indiana State Prison on April 7, 2017, whether written or unwritten, required correctional officers in cell houses to release from their cells any prisoner firefighters housed in their cell house once an emergency call for a fire was made by an officer in another cell house.

**Response**: Deny.

15.    Admit that the policies, procedures, and customs in effect at Indiana State Prison on April 7, 2017, whether written or unwritten, did not require correctional officers in cell houses to release from their cells any prisoner firefighters housed in their cell house once an emergency call for a fire was made by an officer in another cell house.

**Response**: Deny.

16.    Admit that no emergency evacuation drills requiring the physical evacuation of prisoners from the cell houses were conducted during the night shift between April 7, 2015 and April 7, 2017.

3

**Response**: Defendants lack sufficient knowledge to admit or deny this Request and therefore deny.

17.    Admit that Indiana State Prison had a written policy in effect on April 7, 2017 requiring an officer assigned to a cell house to respond to a prisoner's cell if he heard that prisoner yelling.

**Response**: Defendants object as it is unclear what precisely this Request asks Defendants to admit to given prisoner yelling is not an uncommon occurrence in a prison. Notwithstanding this objection, Defendants lack sufficient knowledge to admit or deny this Request and therefore deny.

18.    Admit that Indiana State Prison did not have a written policy in effect on April 7, 2017 requiring an officer assigned to a cell house to respond to a prisoner's cell if he heard that prisoner yelling.

**Response**: Admit.

19.    Admit that Danny Means was not released from his cell during the 2017 Fire before the evacuation of B Cell House started.

**Response**: Defendants lack sufficient knowledge to admit or deny this Request and therefore deny.

20.    Admit that a fire in a prisoner's locked cell poses a substantial risk of serious harm to that prisoner.

**Response**: Defendants object as this request is vague and ambiguous given the nature, size, and extent of a "fire." Defendants also object as a "substantial risk of serious harm" is a term of art and object to the extent this Request seeks a legal conclusion and would require Defendants to reach a legal conclusion in order to prepare a response. Notwithstanding those objections, Defendant admits that offenders routinely "spark" electrical outlets in order to start a flame for different purposes inside their cells. Defendants accordingly lack sufficient knowledge to admit or deny this Request and therefore deny.

21.    Admit that, in the event of a fire in a prisoner's locked cell, failing to take prompt action to either release a prisoner from his cell or extinguish the fire would expose that prisoner to a substantial risk of serious harm.

**Response**: Defendants object as this request is vague and ambiguous given the nature, size, and extent of a "fire." Defendants also object as a "substantial risk of serious harm" is a term of art and object to the extent this Request seeks a legal conclusion and would require Defendants to reach a

4

legal conclusion in order to prepare a response. Defendants lack sufficient knowledge to admit or deny this Request and therefore deny.

22.     Admit that maintaining prison policies that failed to ensure prompt emergency response by correctional staff in the event of a fire in a prisoner's locked cell would expose prisoners at the prison to a substantial risk of serious harm.

**Response**: Deny.

23.     Admit that maintaining prison policies that failed to ensure the prompt release of prisoner firefighters from their cells in the event of a fire in a prisoner's locked cell would expose prisoners at the prison to a substantial risk of serious harm.

**Response**: Deny.

24.     Admit that if an officer with the keys to Joshua Devine's cell had gone to his cell immediately after the emergency call regarding the 2017 Fire went out, that officer could have opened Joshua Devine's cell door before Joshua received fatal injuries from the fire.

**Response**: Defendants lack sufficient knowledge to admit or deny this Request and therefore deny.

25.     Admit that if an officer with the keys to Joshua Devine's cell had gone to his cell immediately after prisoners in B Cell House began to yell in response to the 2017 Fire, that officer could have opened Joshua Devine's cell door before Joshua received fatal injuries from the fire.

**Response**: Defendants lack sufficient knowledge to admit or deny this Request and therefore, deny.

26.     Admit that the Indiana State Prison Control Room logs from April 7, 2017 were destroyed or discarded in April 2019.

**Response**: Defendants object as "Indiana State Prison Control Room logs" is a vague or undefined term, and therefore deny.

**To Defendants Neal, Gann, Lessner, Beal, Griffin, Nowatzke, Dykstra, Watson, Redden, Puetzer, and Statham only:**

27.     Admit that failing to do evacuation drills requiring the evacuation of prisoners from the cell houses exposed prisoners incarcerated at Indiana State Prison to a substantial risk of serious harm.

5

**Response**: Defendants object as a "substantial risk of serious harm" is a term of art and object to the extent this Request seeks a legal conclusion and would require Defendants to reach a legal conclusion in order to prepare a response. Defendant further objects to this request as it assumes facts not in evidence: that there were no evacuation drills requiring the evacuation of prisoners from the cell houses. Defendants deny.

28. Admit that failing to maintain functioning radios presents a substantial risk of serious harm to prisoners incarcerated at Indiana State Prison.

**Response**: Defendants object as a "substantial risk of serious harm" is a term of art and object to the extent this Request seeks a legal conclusion and would require Defendants to reach a legal conclusion in order to prepare a response. Defendant further objects to this request as it assumes facts not in evidence: that nonfunctioning radios were maintained, that the radios used did not function properly, or both. Defendants deny.

29. Admit that failing to have a policy for evacuating a prisoner from his locked cell in the event of an emergency presents a substantial risk of serious harm to prisoners at Indiana State Prison.

**Response**: Defendants object as a "substantial risk of serious harm" is a term of art and object to the extent this Request seeks a legal conclusion and would require Defendants to reach a legal conclusion in order to prepare a response. Defendant further objects to this request as it assumes facts not in evidence: that there was no policy for evacuating a prisoner from his locked cell in the event of an emergency. Defendants deny.

**To Defendants Neal, Gann and Beal:**

30. Admit that no policy of Indiana State Prison or the Indiana Department of Correction prohibited you from including additional training on emergency response and fire safety procedures and policies as part of the new employee training given to new correctional officers.

**Response**: Admit.

Respectfully submitted,

Office of the Indiana Attorney General

Dated: September 29, 2020

By: Gustavo A. Jimenez
Deputy Attorney General
Attorney No. 35866-53
Office of the Indiana Attorney General

Indiana Government Center South,
5th Floor
302 W. Washington St.
Indianapolis, IN 46204-2770
Phone: (317) 232-6201
Fax:   (317) 232-7979
Email: Gustavo.Jimenez@atg.in.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2020, a copy of the foregoing document was mailed, by first-class U.S. Mail, postage prepaid and properly addressed to the following:

Attorneys for Plaintiff
Lovey & Lovey
311 North Aberdeen St., 3rd Floor
Chicago, IL 60607

Gustavo A. Jimenez
Deputy Attorney General

OFFICE OF INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN  46204-2770
Phone: (317) 232-6201
Fax:  (317) 232-7979
Email: Gustavo.Jimenez@atg.in.gov



Office of Indiana Attorney General
Curtis T. Hill, Jr.
302 West Washington Street
Indiana Government Center South
Fifth Floor
Indianapolis, Indiana 46204

NEOPOST    FIRST-CLASS MAIL
09/29/2020
US POSTAGE $001.80⁰



ZIP 46204
041M11294590

Loevy & Loevy
311 North Aberdeen St., 3rd Floor
Chicago, IL 60607