**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA, SOUTH BEND DIVISION**

| | | |
|---|---|---|
| DENISE DWYER, as Personal Representative of the ESTATE OF JOSHUA DEVINE, | ) ) ) | No. 3:18-cv-00995-JD-MGG |
| Plaintiff, | ) ) | |
| v. | ) ) | Hon. Judge Jon E. DeGuilio, Judge |
| RON NEAL, et al. | ) ) | Hon. Michael G. Gotsch, Sr., M.J. |
| Defendants. | ) ) ) ) | |

# EXHIBIT 90

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

BARBARA DEVINE,                    )
                               )
    Plaintiff,   )
                               )
v.                                 )   CASE NO. 3:18-cv-00995-JD-MGG
                               )
RON NEAL, et al.,                  )
                               )
    Defendants.  )

## DEFENDANT WATSON'S RESPONSES TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

Defendant Anthony Watson, by counsel, submits his responses to Plaintiff's First Set of Interrogatories:

1.     Identify by name and address all Persons who, to the best of your understanding, have knowledge of facts that relate to any of the claims or defenses in this action, including but not limited to all Persons who are not listed in the parties' Rule 26(a)(1) Initial Disclosures. For each Person with knowledge responsive to this Interrogatory, please describe with particularity any categories of facts known by each such Person relating to the claims and defenses in this action, including all categories of facts about which the Person may be competent to testify at trial.

If this Interrogatory is answered by incorporating Documents, please provide the identities of any additional Persons who are not listed in the Documents that you reference, as well as any categories of facts known to any witness relating to the claims or defenses in this action that are not reflected in the Documents that you

1

reference; in the event that you fail to do so, Plaintiff will assume the witnesses and

the substance of their testimony is strictly limited to what is contained in the Documents that you reference.

Response: As far as I know, Ron Neal, Kenneth Gann, Jason Nowatzke, Jeremy Dykstra, Timothy Redden, Christopher Puetzer, and Ryan Statham all know about the fire. There may be other persons identified in the reports that were generated because of the fire.

All parties named above knew of this incident.

2.  Identify every Communication that you have had about any of the allegations, events, or circumstances described in Plaintiff's Complaint with any Person. For each such Communication, please: (a) state with particularity the substance of the Communication; (b) Identify everyone involved in the Communication; (c) provide the date of the Communication; and (d) state whether or not the Communication was memorialized in a report or other Document.

Response: I cannot recall the specific conversations I had with people about this fire because it happened more than two years ago. Anything I said or anyone I talked to may be documented in the Internal and Investigative File.

3.  Identify any and all criminal convictions of any party or witness with knowledge relating to any of the claims or defenses of this action. For each such responsive conviction, identify: (a) the Person who has been convicted and the

nature of the conviction, and (b) the complete factual basis as to why the conviction

your duty to supplement your answer to this Interrogatory remains ongoing as

discovery progresses, and that Plaintiff intends to move *in limine* to bar any

references to convictions not identified in the manner requested.

> **Response:** I have no felony convictions.
>
> I, Lieutenant Anthony J. Watson have no knowledge of why Joshua Devine,
> DOC 119856 was convicted and incarcerated at Indiana State Prison

4.      Please explain with as much particularity as possible when, how, and under what circumstances you became aware of the 2017 Fire. With regard to when you learned of the 2017 Fire, please reference the time or other events to the extent possible. Your response should include your physical location when you learned of the 2017 Fire.

> **Response:**  On April 7, 2017, at approximately 9:45 p.m., I, along with
> Lieutenant T. Redden were in the Captain's office waiting for the count to be
> cleared.  I then received a 10-71 signal in BCH 500 NORTH, and we
> responded along with Officer Ryan Statham.

5.      With specificity, explain each step you took once you learned of the 2017 Fire. If you spoke to, had any Communications with, or acted in coordination with any other individual, including another Defendant or a third-party, please Identify that individual and explain the contents of any Communications with that

3

individual, as well as what actions you both took. The substance of your response

should cover the same period when you first learned of the 2017 Fire up until

twenty-four hours later, and should include all actions, Communications, or

decisions not to act during that time period that relate to or occurred as a result of

the 2017 Fire.

Response: Once we arrived on scene I saw flames coming out of cell 540

north. On that date, offender Devine, Joshua DOC 119856 resided in that

cell. I saw offender Devine at the front of his cell yelling for help.  Officer

Statham and I made an attempt to put the fire out with 2 water fire

extinguishers and an ABC extinguisher.  All 3 had no effect on the fire.  We

also made an attempt to open the door from the key box at the front of the

range.  The door only opened slightly due to the heat from the fire. The fire

began to roar up again and offender Devine stopped yelling.  The fire fighters

arrived on scene and they were able to put the fire out completely and then

made an attempt to open the cell door. The door to cell 540 was jammed but

they were able to open it and removed offender Devine out of the cell.  Devine

was put on a gurney and then we proceeded to remove him from the range.

Officer Statham called a signal 3000 via radio for offender Devine.  I, along

with the firemen carried offender Devine on the gurney down the back

staircase where the medical staff was staged. Once downstairs offender

Devine was put on a stretcher and escorted to the custody hall at which time

the medical staff took over and I went back to the cell house to help with the

4

offender evacuation that was taking place. Once the offenders were evacuated

USDC IN/ND case 3:18-cv-00395-JD document 112-03 filed 05/25/21 page 6 of 12

we went on high alert around the cell house to remove the smoke. Once the firefighters made sure that everything was alright, I assisted the return of the offenders to their cells. After returning the offenders to their cells I was interviewed by a member of the team investigating this incident.

6. What was the cause of the 2017 Fire, and how was this cause determined? Please include all investigative steps taken to reach this conclusion and identify the individuals involved in the investigation.

**Response:** I was not involved in the investigative process. I don't know what caused the fire.

7. Were you prevented in any way from taking action to remove Joshua Devine from his cell and/or open or unlock his cell door immediately upon learning that there was a fire in the cell on April 7, 2017? If your answer is anything other than an unqualified "no," please Identify every Person, situation, circumstance, policy, practice, rule, and/or regulation which you contend prevented you in any way from removing or freeing Devine from his cell, and state fully how such Person, situation, circumstance, policy, practice, rule, and/or regulation prevented you. To the extent that you contend the preventative effect or impediment of any such Person, situation, circumstance, policy, practice, rule, and/or regulation was

5

temporary, please describe the time frame in which you contend it was in place and

explain why and how it ceased.

Response: No, the only thing that hindered us was the fire, which prevented his cell door from opening.

8. Identify any procedures, mechanisms, tools, infrastructure, or equipment in place at Indiana State Prison at the time of the 2017 Fire to reduce the risk of or mitigate the harms or injuries caused by fires, including but not limited to any sprinkler systems, smoke detectors, fire alarms, emergency exits, fire extinguishers or other fire suppression equipment, evacuation plans, and the date and frequency of any fire or evacuation drills conducted in the five years prior to the 2017 Fire. For any physical objects or systems identified in response to this interrogatory, please identify the quantity and physical location(s) of those objects or systems in the Indiana State Prison.

Response: All cell houses have multiple entrances and exits in case of fire. There is a comprehensive fire alarm system in place in all shelters. All shelters are equipped with multiple fire extinguishers. Fire drills are conducted periodically. Staff are drilled on fire related questions by the fire chief.

9. Identify any policies, practices, and procedures in place at Indiana State Prison at the time of the 2017 Fire regarding the locking of prisoners in their

6

cells, including when and why prisoners are locked in their cells, and who locks or

oversees the locking of the cell doors. This further includes who is permitted or

required to have possession of which keys and at what times, as well as where keys

are kept when they are not in the physical possession of any officer and who has

access to those keys. For each policy, practice, or procedure, please identify its

source (i.e. a specific manual or regulation) to the best of your knowledge.

Response: As to specific policies, I don't have that information. As to offenders being locked in their cells, they are to be locked in their cells at all times unless going to and from chow or rec or out for authorized pass or work assignment. As to keys all officers are assigned keys to the ranges that they are working on that day. If the keys are not on the assigned individual they are stored in the key box in the cell house office and back up keys can be found in the lock shop.

10.     Was any disciplinary action considered or taken against any Indiana Department of Correction employee or contractor in relation to the 2017 Fire or Joshua Devine's death? If your answer is anything other than an unqualified "no," please identify the person disciplined or against whom discipline was considered, the reasons for disciplining or not disciplining that person, and the type of disciplinary action taken.

Response: I have no knowledge of any disciplinary action.

11.    For any affirmative defenses that you have asserted or will assert in this matter, please describe the entire factual basis supporting each such defense and specifically identify any witnesses or physical, documentary, or testimonial evidence that supports each such defense. The information sought by this interrogatory is not a mere recitation of the statutory sections, case law, or common law invoked in the defense. Plaintiff requests that you provide a detailed description of every fact and legal basis on which the affirmative defense is asserted so that Plaintiff may have the opportunity to investigate by way of additional discovery requests. For example, if you intend at any point in this litigation to assert an immunity defense, please state all facts, evidence, and legal bases for such a defense, identifying any witnesses or physical, documentary, or testimonial evidence relating to the immunity defense.

Response: Not Applicable

12.    For punitive damages purposes, please estimate your net financial worth. Please describe how that net worth has been calculated by providing a balance sheet of all assets greater than $2,500 USD (including a description of any ownership of stock, mutual funds, real estate, etc.) and including all liabilities. Please also provide an income statement for the five years prior to the filing of this complaint, including your annual salary and any income from any other source for those years.

Response: My current employment I earn $19.28 an hour and scheduled to work 40 hours a week.

8

13.     Did you or any other Person act inconsistently with any of the policies, customs, or practices (formal or informal, written or unwritten) of the Indiana Department of Correction or the Indiana State Prison, as you understand them, at any point during the 2017 Fire or in its immediate aftermath, as described in Plaintiff's Complaint? If your answer is anything other than an unqualified "no," please: (a) identify the particular policy(ies), custom(s), or practice(s) which, to your knowledge, was violated and by whom; (b) describe the circumstances and manner in which said policy(ies), custom(s), or practice(s) was violated; and (c) state whether any discipline resulted from that violation.

Response: I did not violate any policy or procedures. I am not aware of other's violation of policy or procedures.

14.     For any Document requested in Plaintiff's discovery requests which has been lost, discarded or destroyed, please identify each such document as completely as possible and state the approximate date it was lost, discarded or destroyed; the circumstances and manner in which it was lost, discarded or destroyed, including the identities of all persons involved; the reasons for disposing of the Document; the identity of any persons with knowledge of its content; and the identity of the last person known to have seen it.

Response: I have no knowledge of any lost or destroyed documentation.

9

I affirm under penalties for perjury that the facts in the foregoing answers

Dated: _____October 17, 2019_____

_Anthony Watson_ (signature)

                               Anthony Watson

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 22, 2019, a copy of the foregoing document

was emailed, to the following:

Arthur Loevy
Jon Loevy
Sarah Grady
Sam Heppel
Megan Pierce
LOEVY & LOEVY
311 North Aberdeen St., 3rd Floor
Chicago, IL 60607

Daniel F. Rothenberg
Deputy Attorney General